```
                                                            CLERK'S OFFICE U.S. DIST. COURT
                                                                 AT LYNCHBURG, VA
                                                                       FILED
             IN THE UNITED STATES DISTRICT COURT                   AUG 12 2008
            FOR THE WESTERN DISTRICT OF VIRGINIA
                       ROANOKE DIVISION                         JOHN F. CORCORAN, CLERK
                                                                BY: /s/
                                                                       DEPUTY CLERK
```

| | | |
|---|---|---|
| RASHADI ANDRE WEARING, | ) | Civil Action No. 7:07-cv-00253 |
| Petitioner, | ) | |
| | ) | **2255 MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. Norman K. Moon |
| Respondent. | ) | United States District Judge |

Rashadi Andre Wearing, a federal inmate, filed this action as a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. The action is presently before the court on respondent's Motion to Dismiss and the Report and Recommendation of Magistrate Judge B. Waugh Crigler. For the following reasons, the court will adopt in part and reject in part the Report and Recommendation, will deny respondent's Motion to Dismiss, and will grant Wearing's § 2255 motion for relief.

### I.

On December 8, 2004, a grand jury returned a five-count indictment against Wearing and seven other defendants. Wearing was charged with conspiring to distribute fifty grams or more of a mixture or substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 846 (Count One); and with possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Five).

On August 8, 2005, pursuant to a written plea agreement, Wearing pleaded guilty to Count One of the indictment. (Plea Agreement at 1.) In this agreement, the United States agreed to move to dismiss the remaining count of the indictment pertaining to Wearing and to recommend a two-level reduction of his total offense level, for his acceptance of responsibility. (Plea Agreement at 2.) The United States also agreed to leave open the opportunity for Wearing to earn a substantial

assistance motion. (Plea Agreement at 6.) In exchange, Wearing agreed to waive his right to appeal "whatever sentence is imposed on any ground." (Plea Agreement at 5.) Wearing also agreed to "waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding brought under 28, United States Code, Section 2255." (Plea Agreement at 5.) Additionally, Wearing waived "any claim [he] may have for ineffective assistance of counsel known and not raised by [him] with the Court" at the time of sentencing. (Plea Agreement at 8.)[1]

Wearing initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Wearing affirmed that he had read the plea agreement, that he had carefully reviewed every part of the agreement with his attorney, Andrew L. Wilder, that he understood the agreement, and that he was voluntarily agreeing to its terms.

During the plea hearing, Wearing stated under oath that he completed the ninth grade, that he was not under the care of a physician or psychiatrist, and that he was not under the influence of any medication or alcoholic beverage of any kind. (Plea Hr'g Tr., August 8, 2005, at 6-7.) The court established that Wearing was aware of the nature of the charges against him, that he understood the range of punishment that he faced, that he understood how the United States Sentencing Guidelines might apply in his case, and that he knew that he had the right to a jury trial. (Plea Hr'g Tr., August 8, 2005, at 8-13.) The court also established that Wearing was aware that he would be bound by his plea agreement, even if his sentence was more severe than he expected. (Plea Hr'g Tr., August 8, 2005, at 13-14.)

The court instructed Wearing's counsel to review the salient portions of the plea agreement

---

[1] The court notes that the plea agreement, docket number 176, is currently missing page nine. The copy of the plea agreement, submitted as respondent's exhibit number 2 at the May 9, 2008 evidentiary hearing, is also missing page nine. Page nine includes a portion of the ineffective assistance of counsel waiver quoted by the court. However, the waiver, in its entirety, was read into the record at the aforementioned evidentiary hearing. (Evidentiary Hr'g Partial Tr., May 9, 2008, at 39.)

that Wearing had reached with the Government. In response, counsel specifically noted the "post-conviction waivers" in the plea agreement. (Plea Hr'g Tr., August 8, 2005, at 17.) Upon being asked if the agreement described by his attorney was consistent with his own understanding of the agreement, Wearing responded in the affirmative. (Plea Hr'g Tr., August 8, 2005, at 17.)

The court also specifically inquired as to whether Wearing was voluntarily pleading guilty. Wearing affirmed that he had discussed the plea agreement with his attorney before he signed it, and that no one had made any promises or induced him to plead guilty. (Plea Hr'g Tr., August 8, 2005, at 17-18.) Wearing also affirmed that he was satisfied with the services and advice that counsel had provided. (Plea Hr'g Tr., August 8, 2005, at 8.) After all of the court's questions, Wearing stated that he still wanted to plead guilty. (Plea Hr'g Tr., August 8, 2005, at 20.) The court ultimately found that Wearing was "fully competent and capable of entering an informed plea," and that his plea of guilty was "knowing and voluntary." (Plea Hr'g Tr., August 8, 2005, at 20.)

On June 27, 2006, Wearing was sentenced at the bottom of the applicable guideline range, to a total term of imprisonment of 262 months. (Sentencing Hr'g Tr., June 27, 2006, at 21.) Before the court pronounced the sentence, Wearing was given the opportunity to address the court and he did so. (Sentencing Hr'g Tr., June 27, 2006, at 13-17.) At that time, Wearing did not express any desire to withdraw from the plea agreement, or voice any complaints regarding the quality and effectiveness of counsel's representation. Instead, Wearing apologized to the City of Charlottesville, his family, and the United States. (Sentencing Hr'g Tr., June 27, 2006, at 16-17.) He did not appeal his conviction or sentence.

On May 18, 2007, Wearing filed the instant § 2255 motion,[2] raising the following claims that

---

[2] On June 20, 2007, Wearing submitted copies of two letters as support for his § 2255 motion. The court construed his submission as a motion to amend and granted the motion on July 2, 2007.

3

counsel was ineffective in:

    A.    Misleading Wearing into an unknowing, involuntary, and unintelligent plea;

    B.    Failing to inform the court that Wearing was under the influence of medication that hampered his ability to understanding the proceedings;

    C.    Failing to argue that Wearing's sentence was unreasonable pursuant to United States v. Booker, 543 U.S. 220 (2005), and 18 U.S.C. §3553;

    D.    Failing to argue the impropriety of Wearing's enhanced sentence; and

    E.    Failing to appeal Wearing's conviction and sentence.

Respondent filed a Motion to Dismiss on July 13, 2007. After Wearing responded, the court took respondent's Motion to Dismiss under advisement and ordered an evidentiary hearing to determine whether Wearing requested his attorney to file an appeal. The court referred the matter to United States Magistrate Judge B. Waugh Crigler, pursuant to 28 U.S.C. § 636(b)(1)(B), for a recommended disposition of the case. An evidentiary hearing was held on May 9, 2008, and the Magistrate Judge filed a Report and Recommendation, finding that Wearing failed to prove by a preponderance of the evidence that he received ineffective counseling regarding his right to appeal. The Magistrate Judge further addressed Wearing's remaining claims and ultimately recommended that respondent's Motion to Dismiss be granted. Wearing, through counsel, filed objections to the Report and Recommendation within the ten days allotted under 28 U.S.C. § 636(b).[3]

---

[3] On May 8, 2008, a day before the evidentiary hearing, Wearing filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2), and because of evidence of Wearing's "mental disorder" which "was not weighed independent[ly] of the guidelines at the original sentencing." On June 23, 2008, the court granted Wearing's motion and reduced Wearing's sentence of imprisonment from 262 months to 210 months. The court noted in its Order that United States Sentencing Commission Guidelines Manual § 1B1.10(a)(3) provides that, when reducing a sentence pursuant to 18 U.S.C. § 3582(c)(2), the court may only determine the amended guideline range that would have been applicable to the defendant if retroactive amendment 706 had been in effect at the time of sentencing and must leave all other guideline application decisions unaffected. Accordingly, the court denied Wearing's requests "to be resentenced for reasons other than Amendment 706." Wearing's appeal of this determination is currently pending.

4

## II.

Wearing makes the following objections to the Magistrate Judge's Report and Recommendation:

1. Wearing objects to the finding that Wearing's expression of dissatisfaction, including potentially, an indication that the case needed to be appealed, did not amount to an unequivocal direction to appeal, because this finding is "not only contrary to the evidence adduced at the hearing" but is not based on whether Wearing "reasonably demonstrated . . . that he was interested in appealing" as required pursuant to Roe v. Flores-Ortega, 528 U.S. 470, 480 (1999);

2. Wearing further objects to the Magistrate Judge's failure to address whether Wilder had a duty to consult with Wearing on the issue of an appeal" after Wearing's expression of dissatisfaction, his apparent expectation that he would receive only a 120 month sentence to be further reduced by a § 5K motion from the government, and the refusal of the court to depart below the guidelines despite the disclosure of evidence concerning Wearing's mental disorder;

3. Wearing objects to the fact that the Magistrate Judge chose to credit Wilder's testimony on the question of whether there was an unequivocal direction to appeal because Wilder was the only witness who did not testify or corroborate testimony that Wearing expressed a desire to appeal: he merely indicated that he did not recall;

4. Wearing objects to the Magistrate Judge's determination that Wearing "knew under the plea agreement, and he heard the presiding District Judge tell him, he had waived his right to appeal any sentence" because it is at odds with the transcript and "any appeal waiver contained within the guilty plea is irrelevant to determining whether

5

      defense counsel failed to consult with his client about an appeal, and whether there was prejudice from this failure."

5. Wearing objects to the Magistrate Judge's finding that "Wilder did not mislead the petitioner regarding any aspect of the plea agreement" because Wearing, "either because of his mental disorder" or "inadequate advice," "continued to believe that he was entitled to a 10 year sentence pursuant to a § 5K motion."

6. Wearing objects to the finding that Wilder's "unreasonable conduct" in failing to inform the court at the guilty plea hearing that Wearing was under the care of physicians for a psychiatric disorder was "not prejudicial";

7. Wearing further objects to the Magistrate Judge's "assessment of Wearing's condition on August 8, 2005, the date of the Rule 11 Colloquy, by the [M]agistrate [J]udge's lay observation of Wearing on May 9, 2008";

8. Wearing objects to the Magistrate Judge's determination that "[a]t no time did Wilder believe petitioner was mentally ill" because Wilder clearly testified that he knew of Wearing's mental illness at the time of his appointment and at the guilty plea hearing, and presented evidence of mental illness at the sentencing hearing;

9. Wearing finally objects to the finding that "Wilder did not fail to argue that petitioner's sentence was unreasonable, nor did he fail to argue the impropriety of an enhanced sentence" because Wilder failed to challenge the court's conclusion on the subject, failed to file anything in writing to support a downward departure motion, failed to request an expert in support of the motion, and failed to call Dr. Israel, the author of Wearing's psychological evaluation, to testify at sentencing.

The court is charged with making a de novo determination of any portion of the Report and

6

Recommendation of the Magistrate Judge to which a specific objection is made and may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b)(1). After reviewing the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and defendant's objections, the court agrees with the factual conclusions of the Magistrate Judge; however, the court disagrees with the recommendation that Wearing's § 2255 motion, based on a claim of ineffective assistance of counsel in failing to file an appeal, be denied. Accordingly, the court adopts and incorporates the Report and Recommendation by reference except to the extent indicated below.

### III.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must first show that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, Wearing must prove that counsel was ineffective and, but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470). The inmate need not show a reasonable probability of success on appeal. See Peguero v. United States, 526 U.S. 23, 28 (1999).

Where a defendant instructs his attorney to file an appeal and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S.

at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about an appeal. See Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926. Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id. If counsel has not consulted with defendant, the court must then determine whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id.

Not every failure to consult results in constitutionally deficient performance. Id. at 479. Rather, counsel only has a constitutionally imposed duty to consult where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal) or (2) that the defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. at 480. Nonetheless, despite the fact that a defendant pleaded guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea agreement waived his right to appeal. Id.

Upon a review of the transcripts of the evidentiary hearing and all pertinent portions of the record, the court finds that counsel provided ineffective assistance of counsel to Wearing. The Magistrate Judge determined that the weight of the evidence supported Wearing's testimony that he was surprised and upset at the court's sentencing determination and, accordingly, that he made some sort of outburst at the conclusion of the hearing indicating his desire to appeal. Wearing, Wilfredo Pesante, Wearing's step-father, and Charles Bennett, a family friend, all testified that Wearing stated at the conclusion of the sentencing hearing that his conviction and sentence "definitely had to be appealed." (Evidentiary Hr'g Tr., May 9, 2008, at 119.) Even though Wilder testified that Wearing "did not say anything about an appeal" subsequent to the sentencing determination, the Magistrate Judge found that Wearing "likely did express his dissatisfaction, maybe even in the words to the effect, 'This needs to be appealed.'" (Evidentiary Hr'g Tr., May 9, 2008, at 31; Report and Recommendation, June 6, 2008, at 25.) The Magistrate Judge found it "likely" that Wearing indeed made such a statement, but ultimately determined that this "post-sentencing reaction" was not "a direction to Wilder to appeal." (Report and Recommendation, June 6, 2008, at 25.) It appears to this court that, if a defendant specifically expresses his dissatisfaction with his sentence and indicates that it "needs to be appealed," this is an unequivocal instruction to counsel to file an appeal or, at the very least, triggers the duty to consult regarding the advantages and disadvantages of filing an appeal. The Magistrate Judge failed to address whether Wilder had a duty to consult with Wearing; however, the court finds that Wearing's outburst subsequent to the sentencing hearing and his "surprise" at the 262 month sentence should have "reasonably demonstrated" to Wilder that Wearing was interested in appealing. Flores-Ortega, 528 U.S. at 480. In this case, the record is clear that, while Wilder had contact with Wearing subsequent to the plea hearing, no consultation concerning an appeal

9

occurred.[4] Therefore, the court finds that counsel had a per se duty to file an appeal or, at the very least, consult with Wearing concerning an appeal and that he provided ineffective assistance in failing to do so.

### IV.

As the court finds that counsel was ineffective failing to file an appeal or, alternatively, to consult with Wearing about an appeal, the court finds that Wearing's remaining claims of ineffective assistance of counsel and an unknowing and involuntary guilty plea must be dismissed without prejudice. See United States v. Killian, 22 F. App'x 300 (4th Cir. 2001).

### V.

Based on the foregoing, the court adopts in part and rejects in part the Report and Recommendation of the Magistrate Judge. Specifically, the court disagrees with the finding that "the evidence fails to show that Wilder was unequivocally directed by his client to appeal, or that he failed to counsel petitioner about an appeal." (Report and Recommendation, June 6, 2008, at 24.)

---

[4] As previously mentioned, the duty to consult is also triggered when counsel has reason to think that a rational defendant would want to appeal. It does not appear to this court that there are any non-frivolous grounds for an appeal. Based on the appellate waiver in his plea agreement, the only claims which Wearing could raise on appeal, despite the waiver, were that the sentence was imposed in excess of the maximum penalty allowed or was based on the consideration of a constitutionally impermissible factor such as race. United States v. Lemaster, 403 F.3d 216, 218 n.2 (4th Cir. 2005) (citing United States v. Marin, 961 F.2d 493 (4th Cir. 1992)). As neither of these issues have been raised, the court finds that Wearing had no non-frivolous grounds on which to base his appeal. The court does note, however, that Wearing's current claim that his guilty plea was unknowing and involuntary, based on his mental state and related medical treatment, has the potential to fall outside the scope of the plea agreement waivers. The court lacks sufficient information to conclusively determine whether such a claim is non-frivolous.
Moreover, in exchange for his guilty plea and waivers of his rights to appeal sentencing guideline factors and collaterally attack, Wearing received significant benefits for his bargain. Pursuant to the plea agreement, the United States agreed to dismiss Count Five of the indictment, the United States agreed to recommend a two-level reduction in Wearing's total offense level for his acceptance of responsibility (Wearing ultimately received a three-level reduction), Wearing was held accountable for more than 500 grams but less than 1.5 kilograms of cocaine base, and the agreement left open the possibility that Wearing could earn a motion for substantial assistance. Without those benefits, on Count One alone, Wearing faced a maximum statutory punishment of life imprisonment plus a four million dollar fine; he would not have received the three-level reduction to his total offense level for his acceptance of responsibility, which would have increased his Sentencing Guidelines range for that count to 360 months to life; and he risked conviction on Count Five in the indictment. Accordingly, in light of Wearing's waiver of his right to appeal any sentencing guideline factors, the apparent absence of any non-frivolous ground for appeal, and the significant benefit of Wearing's plea bargain, the court finds that a rational defendant would not want to appeal in this case.

10

Case 3:04-cr-00092-NKM    Document 344    Filed 08/12/08    Page 10 of 11    Pageid#: 1080

Because the Magistrate Judge found as a matter of fact that Wearing "likely" expressed dissatisfaction as to his sentence and stated that it needed to be appealed, the court finds that this, at the very least, should have reasonably demonstrated to counsel that Wearing was interested in appealing. The record is clear that counsel failed to consult with Wearing concerning the advantages and disadvantages of filing an appeal; thus, counsel was ineffective. Accordingly, respondent's Motion to Dismiss must be denied and Wearing's § 2255 motion for relief must be granted as to his claim that counsel failed to file or consult with him about a direct appeal. Specifically, Wearing's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, will be granted to the extent that the court will re-enter judgment in Criminal Case No. 3:04-cr-00092-8 and petitioner will have a renewed opportunity to file a direct appeal. See Fed. R. App. P. 4(b).

The Clerk is directed to send a copies of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

ENTER: This 12th day of August, 2008.

*/s/ [signature]*
United States District Judge