# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:04-cr-00092 |
| v. | MEMORANDUM OPINION |
| RASHADI ANDRE WEARING, *Defendant.* | JUDGE NORMAN K. MOON |

The matter is now before me upon consideration of the report and recommendation (the "Report") of United States Magistrate Judge B. Waugh Crigler (docket no. 433). I referred this matter to Judge Crigler pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing on the issue of Defendant Rashadi Andre Wearing's competency to plead guilty at the time of his guilty plea hearing in August 2005. The Magistrate Judge filed his Report recommending that this Court enter an order finding that Wearing possessed the mental capacity to enter a knowing and voluntary plea at the time of his plea hearing. Defendant timely filed objections to the Report, obligating the Court to undertake a de novo review of those portions of the Report to which specific objections were made.

After a thorough examination of the documented record, the applicable law, and Defendant's objections, I hereby adopt in full the Report and Recommendation of the Magistrate Judge. I find that Wearing was competent to enter a guilty plea at the time of his plea hearing, and judgment against him will be reimposed.

# I. BACKGROUND

The facts in this case were thoroughly set forth by the Magistrate Judge, and I will only briefly reiterate them here. On December 8, 2004, a grand jury returned a five-count indictment against Wearing and seven other defendants. Count One charged Wearing with conspiring to distribute fifty grams or more of a mixture or substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 846. Count Five charged Wearing with possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

On August 8, 2005, pursuant to a written plea agreement, Wearing pleaded guilty to Count One of the indictment. In the plea agreement, the United States agreed to move to dismiss Count Five. During the plea hearing, Wearing stated under oath that he was not under the care of a physician or psychiatrist, and that he was not under the influence of any medication of any kind. I sentenced Wearing to a total term of imprisonment of 262 months, which fell at the bottom of the applicable guideline range. His sentence was later reduced to 210 months under 18 U.S.C. § 3582(c)(2).

Wearing filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on May 18, 2007, alleging, inter alia, that his counsel was ineffective for failing to appeal his conviction and sentence. The Magistrate Judge entered a report and recommendation on June 6, 2008 recommending that the motion to vacate his sentence be dismissed because Wilder failed to prove ineffective assistance of counsel. On my review, I granted Wearing's motion to vacate on the basis that his counsel had a per se duty to consult with Wearing about an appeal but failed to do so, and, as a result, his counsel had been ineffective. *Wearing v. United States*, No. 7:07-cv-00253, 2008 U.S. Dist. LEXIS 62363, 2008 WL 3485383 (W.D. Va. Aug. 12, 2008). I reentered judgment in the criminal action, and Wearing timely filed a direct appeal of the

judgment. Wearing's appeal alleged that he was not competent at the time to enter a guilty plea, and the government moved to remand the appeal in order to allow the district court to assess whether Wearing was competent to enter a guilty plea. The United States Court of Appeals for the Fourth Circuit vacated the judgment against Wearing and remanded "for the purpose of permitting the district court to determine Wearing's competency at the time of his guilty plea. If the district court determines that Wearing was competent to enter his guilty plea, and thus declines to vacate Wearing's plea, this court instructs the district court to reimpose judgment against Wearing . . . ." *United States v. Wearing*, No. 08-7154, 2009 U.S. App. LEXIS 29462, at *1 (4th Cir. Nov. 12, 2009).

On remand, I referred the matter to Judge Crigler pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct an evidentiary hearing on the issue of Wearing's competency at the time of his guilty plea. At the evidentiary hearing before Judge Crigler on October 26, 2010, Defendant offered as evidence the testimony and report of J. Anderson Thomson, Jr., M.D., a forensic psychiatrist, and Marilyn F. Minrath, Ph.D., M.S.N., a forensic psychologist, both of whom evaluated Wearing. The government offered as evidence the testimony and report of Dia N. Brannen, Ph.D., a forensic psychologist who evaluated Wearing.[1] Judge Crigler issued his Report on January 27, 2011, setting forth his findings of fact and conclusions of law, and recommending that this Court enter an order finding that Wearing possessed the mental capacity to enter a knowing and voluntary plea at the time of his plea hearing in August 2005. Defendant filed objections to the Report.

I will discuss the facts further only as necessary to address Defendant's objections.

---

[1] Judge Crigler also took judicial notice of the court records in this criminal matter and in the related motion to vacate, and I do the same to the extent they are relevant. *See* Fed. R. Evid. 201.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 72 permits a party to submit objections to a magistrate judge's ruling to the district court within fourteen days of the order. Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court may adopt without de novo review any portion of the magistrate judge's recommendation to which the defendant does not raise a specific objection as long as it is not clearly erroneous or contrary to law. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). General objections to a magistrate judge's report and recommendation, reiterating arguments already presented, lack the specificity required by Rule 72 and have the same effect as a failure to object. *See Orpiano*, 687 F.2d at 47; *Veney v. Astrue*, 539 F. Supp. 2d 841, 845-46 (W.D. Va. 2008) (citations omitted). The district court may accept, reject, or modify the recommended disposition based on its de novo review of the recommendation and the objections made. Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

### A.

Defendant objects to the legal standard applied by the Magistrate Judge to retrospectively assess Wearing's competency to plea guilty. In the Report, the Magistrate Judge stated, in pertinent part:

> While a proceeding under Fed. R. Crim. P. 11 is designed to provide the avenue by which the court ascertains whether a

defendant knowingly and intelligently enters a plea, it is clear that "[b]efore a court may accept a guilty plea, it must ensure that the defendant is competent to enter the plea." *United States v. Damon*, 191 F.3d 561, 564 (4th Cir. 1999). The test for determining competency to enter a plea is the same as that to stand trial, namely whether a defendant "has sufficient present ability to *consult* with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (emphasis added); *see also Godinez v. Moran*, 509 U.S. 389, 402 (1993) (applying the standard to guilty plea proceedings).

Report at 16-17.

Defendant objects to the Magistrate Judge's application of the *Dusky* standard, instead arguing that *Damon* supplies the correct standard for determining competency under the particular circumstances of this case. Specifically, Defendant argues:

> [U]nder *Damon* the Fourth Circuit endorsed a general rule that where there had been a defect in the Rule 11 colloquy, which prevented the district court from considering the mental disorder and medication of a mentally disordered defendant at the time the guilty plea was accepted, the guilty plea must be vacated. From this rule, a narrow exception was carved out for the unusual facts in *Damon*.
>
> This narrow exception allows a trial court to avoid vacating the guilty plea, if and only if: 1) there is no question of competency to plead guilty, other than the effect of the medicinal regimen (which was the factual setting of that case); and, 2) it is "demonstrated that [the defendant's] medicinal regimen did not have the potential to produce a significant mind-altering effect."
>
> If this is the standard by which the defendant's competency to enter a plea of guilty should be retrospectively assessed, then the burden is on the government to "demonstrate" that the medicinal regimen, a term which includes not just the pharmaceutical effects of the prescribed drugs but dosing and the regularity of administration, lacked a "significant mind-altering effect." A medicinal regimen might in this context have a mind-altering effect without evidence that the effect impaired competency.

Def.'s Objections at 2-3 (citations omitted).

In *Damon*, the defendant had informed the district court judge during his guilty plea hearing that he was under the influence of an anti-depressant drug, but the judge did not inquire into the drug's effect on the defendant and went on to accept his guilty plea. 191 F.3d at 562. The Fourth Circuit held that the district court erred where it was "put on direct notice that [the defendant] could be under the influence of a drug while entering his plea," and "failed to inquire about what effect, if any, [the defendant's] medication had on his ability to make a voluntary plea and to understand the consequences." *Id.* at 565. While the Fourth Circuit observed that "the usual remedy for a Rule 11 violation involving a question of competence or voluntariness is to vacate the defendant's guilty plea," it allowed the matter to be remanded to determine whether the error was harmless. *Id.* The Fourth Circuit directed the district court to determine "whether the medication [the defendant] took, based on objective data about its nature and effect, had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea." *Id.* The court specified that the Rule 11 error would be harmless only if the medication did not have the capability of undermining the validity of the guilty plea; otherwise, the plea should be vacated. *Id.* at 566.

Although Defendant urged the Magistrate Judge to apply the teachings of *Damon*, the Magistrate Judge found *Damon* inapposite on the present facts because the evidence failed to demonstrate "that Wearing was even taking medications immediately before, or on the date of or after he pleaded guilty," and "at most, Wearing was prescribed less than therapeutic levels of medication which, alone could support a finding he, essentially, was unmedicated at the time of his plea hearing." Report at 17-18.

Even if Wearing was medicated at the time, *Damon* did not endorse a new standard for determining a defendant's competence to plead guilty after an evidentiary hearing. The approach

taken in *Damon* sought to balance the Fourth Circuit's aversion of ordering the district court to conduct a retrospective examination of the defendant's mental state at the time he entered the guilty plea with its desire to avoid immediately vacating the plea if the Rule 11 error was harmless. *See Damon*, 191 F.3d at 565. Importantly, the Fourth Circuit in *Damon* did not direct the trial court on remand to conduct a retrospective examination of the defendant's state of mind when he entered the guilty plea. *See id.* Here, in contrast, based on the unopposed motion of the government, the Fourth Circuit vacated Wearing's judgment of conviction and remanded the case with specific instructions to make a retrospective determination of Wearing's competency to enter his guilty plea in August 2005. The Fourth Circuit did not limit the competency evaluation to whether Wearing's medications had the capability to produce a sufficient effect on his mental faculties to render him incompetent to enter a guilty plea. *See United States v. West-Bey*, 188 F. Supp. 2d 576, 582 (D. Md. 2002) (declining to apply *Damon* standard on that basis). Thus, the correct standard to ascertain a defendant's competence to plead guilty is found in *Dusky* and governs the present matter.[2]

In an evidentiary hearing on competency to enter a guilty plea, the burden is on the defendant to demonstrate his incompetency by a preponderance of the evidence. *United States v. Holbrook*, 613 F. Supp. 2d 745, 769 (W.D. Va. 2009) (quoting *Walton v. Angelone*, 321 F.3d 442, 459-60 (4th Cir. 2003)); *cf. United States v. Truglio*, 493 F.2d 574, 578 (4th Cir. 1974) (stating that to prevail, defendant must "demonstrate that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the

---

[2] The *Dusky* standard has been applied repeatedly by the Fourth Circuit to determine mental competency. *See, e.g.*, *United States v. Moussaoui*, 591 F.3d 263, 291 (4th Cir. 2010); *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003); *United States v. General*, 278 F.3d 389, 395-96 (4th Cir. 2002); *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995).

charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea") (quotations omitted).

Based on the foregoing, Defendant's objection to the legal standard employed by the Magistrate Judge is overruled.

**B.**

Defendant next raises several objections to the factual findings made by the Magistrate Judge. First, Defendant objects to the Magistrate Judge's statements regarding whether Wearing instructed his attorney to appeal his sentence when he did not receive a sentence consistent with his expectations. *See* Def.'s Objections at 4-5. On page two of the Report, it states that "[t]he undersigned held an evidentiary hearing on May 9, 2008. The undersigned rendered a Report finding that Wearing had failed to prove by a preponderance of the evidence that he had requested an appeal." Report at 2. Then, on page twenty-three of the Report, it states that "[w]hether one chooses to believe his testimony, Wearing's post-conviction hearing testimony reveals that he sufficiently understood and was aware enough of the provisions of the plea agreement that, when he did not receive a sentence consistent therewith, he instructed counsel to appeal the sentence." *Id.* at 23. Defendant complains that the Magistrate Judge found in one part of the Report that Wearing did not instruct counsel to appeal following sentencing, and in another part he relied on the fact that Wearing did instruct counsel to appeal.

This issue merits some clarification. In the June 6, 2008 report and recommendation on Wearing's motion to vacate his sentence, the Magistrate Judge found that Wearing had expressed dissatisfaction with the sentence imposed upon him, but that expression did not amount to an unequivocal direction to appeal. Thus, the statement on page two of the Report that the Magistrate Judge found that Wearing failed to prove he had requested an appeal is accurate.

The Magistrate Judge found, and I agreed, that Wearing was surprised and upset at the sentence and made some sort of outburst at the conclusion of the hearing indicating his desire to appeal.[3] *Wearing*, 2008 U.S. Dist. LEXIS 62363, at *14. I found that "if a defendant specifically expresses his dissatisfaction with his sentence and indicates that it 'needs to be appealed,' this is an unequivocal instruction to counsel to file an appeal or, at the very least, triggers the duty to consult regarding the advantages and disadvantages of filing an appeal." *Id.* at *15. Because I found that Wearing's expression of dissatisfaction amounted to an instruction to counsel to appeal, the Magistrate Judge's reliance, on page twenty-three of his Report, on the fact that Wearing instructed his counsel to appeal is also accurate. Because there is no contradiction, Defendant's objection is overruled.

Defendant next objects to the finding that Wearing was not medicated on the day of his guilty plea because the evidence showed that "the medication record was incomplete, that the defendant was both receiving medication on an irregular basis around the time of his guilty plea." Def.'s Objections at 5. When commenting on Dr. Thomson's testimony and report, the Magistrate Judge stated:

> According to Thomson, the medication levels Wearing was prescribed at that time would have had no effect on his ability to understand the proceedings.
>
> [Thomson] further noted that the medication records from [Central Virginia Regional Jail] do not reveal that Wearing was taking any type of medication on or around the dates of his plea hearing. There were entries reflecting the dates he took his prescribed medication, entries on the dates he refused his medication and, then, dates indicating no medications either were given or refused. Dr. Thomson took those absences to represent an "unclear" record

---

[3] The testimony offered at the May 9, 2008 evidentiary hearing held before the Magistrate Judge largely supported this finding. There, Wearing, Wearing's step-father, and a family friend of Wearing all testified that Wearing stated at the conclusion of the sentencing hearing that his conviction and sentence definitely had to be appealed. Wearing's attorney testified that Wearing did not say anything about an appeal.

of medications from which he concluded that medications were given and taken.

Report at 8. The Magistrate Judge added in a footnote:

> Frankly, the undersigned believes Dr. Thomson's testimony in this regard to be the result of an uninformed conclusion on his part which fails to account for the universal need for protocols in correctional and detention facilities documenting the dispensing of medication to inmates in order to avoid the litigation risks associated with a failure to perform such documentation.

*Id.* at 8 n.4.

When commenting on Dr. Brannen's testimony and report, the Magistrate Judge stated:

> Moreover, Brannen pointed out that Wearing, essentially, was unmedicated at the time of his plea. She believed that her conclusion was consistent with what both Thomson and Minrath found, namely that defendant was prescribed sub-therapeutic low doses, and that he was non-compliant with his prescriptions at the time of the plea.

*Id.* at 14.

After considering the evidence, the Magistrate Judge concluded:

> [T]he preponderance of the evidence in this case fails to demonstrate that Wearing was even taking medications immediately before, or on the date of or after he pleaded guilty. All the evidence points to the fact that, at most, Wearing was prescribed less than therapeutic levels of medication which, alone could support a finding he, essentially, was unmedicated at the time of his plea hearing . . . .
>
> The greatest weight of the evidence shows that Wearing was not even taking the prescribed levels before and on the date of the plea hearing. In arriving at this finding, the undersigned will draw the usual inference from the absence of entries in the official [Central Virginia Regional Jail] medical record to find those absences demonstrate exactly what they purport to represent, namely that Wearing was not taking medications on the days where none were shown to have been dispensed or received. In this regard, the undersigned declines to accept Dr. Thomson's interpretation of the records that the absence of dispensing entries show they were dispensed. There is a great deal of credible evidence in the records

> before the court, even from Wearing's own prior testimony at the plea hearing and the post-conviction proceeding, demonstrating his refusal to take prescribed drugs during the relevant time. From all the evidence, the undersigned concludes that Wearing was not taking medication on the dates the [Central Virginia Regional Jail] medication records reflect that none were dispensed or received, including the dates relevant to the entry of his plea.

*Id.* at 17-18.

Upon my de novo review, I agree with the Magistrate Judge's findings that the levels of the medications that Wearing was prescribed in the period before his guilty plea were sub-therapeutic and that Wearing failed to take or refused to take several doses in and around the time of the guilty plea. Consequently, Wearing failed to show that he was even under the influence of prescription drugs on the day he entered the plea, let alone that the drugs interfered with his ability to consult with his lawyer and understand the proceedings against him. The objection is overruled.

Defendant objects to the "implication" on page twenty of the Report that "Dr. Thomson and Dr. Minrath could not or did not diagnose mental disorder in the defendant at the time of the guilty plea in 2005." Def.'s Objections at 6. Precisely what the Magistrate Judge found was as follows:

> In assessing the weight to be given the Thomson-Minrath Forensic Evaluation and their later testimony, the undersigned observes that no diagnosis initially was offered to support their conclusions that Wearing was incompetent. Moreover, there initially was some discrepancy between Dr. Thomson and Minrath in their testimony over whether Wearing suffered a Bipolar Type I or Type II disorder. Finally, neither expert, but especially Dr. Thomson, could say which of the diagnostic criteria were met in support of the diagnosis.

Report at 20.

Careful scrutiny of the record reveals that the above statement is accurate. It does not imply that Dr. Thomson and Dr. Minrath did not supply a diagnosis of bipolar disorder. The Magistrate Judge clearly stated that, when on the stand, both experts did provide such a diagnosis, although they differed over which type of bipolar disorder afflicted Wearing. For example, in the Report, it is described that Dr. Thomson opined that Wearing's records "were 'consistent with' a diagnosis of a bipolar affective disorder, namely a Bipolar Type I disorder under DSM-IV" in August 2005. *Id.* at 5. It is also described how Dr. Minrath offered the conclusion, on the stand, that Wearing suffered from bipolar II disorder at the time. *Id.* at 10. There is no implication that Dr. Thomson or Dr. Minrath did not or could not diagnose mental disorder in Wearing. The objection is overruled.

Defendant objects to the Magistrate Judge assigning greater weight to the diagnosis of Dr. Brannen because Dr. Brannen's examination of Wearing was conducted on an inpatient basis at a federal penitentiary. *See* Def.'s Objections at 6. Defendant elaborates that since the purpose of the evaluation of Wearing's competency was to ascertain his competency in 2005, not presently, no advantage is gained by observing Wearing for a longer period of time. *See id.* at 7. I think Defendant exaggerates the significance of the Magistrate Judge's comment, in a footnote, that Dr. Minrath's Minnesota Multiphasic Personality Inventory Type 2 (MMPI-2) results would be more reliable had Dr. Minrath performed further testing for cross-validation purposes or had the opportunity to observe Wearing over a longer period of time. *See* Report at 12, 12 n.10. Defendant fails to direct the Court to any place in the Report in which the Magistrate Judge assigned greater weight to Dr. Brannen's opinion because it was based on observation of Wearing over a longer period of time. The objection is therefore overruled.

Defendant objects to the Magistrate Judge's "focus" on "the defendant's lack of impairment in his ability to understand the nature of the proceedings against him, rather than the relevant, and obvious, impairment of his ability to assist counsel in his own defense." Def.'s Objections at 6. I disagree. The Magistrate Judge directed adequate attention to both prongs of the *Dusky* standard: whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402. For example, the Magistrate Judge found that there was no signal of incompetency at the plea hearing, that "the record of the post-conviction proceedings shows he actually was able to consult with counsel before and at the time of his plea because, according to his own testimony, he conducted himself in a manner consistent with his counsel's instructions," and that he instructed counsel to appeal the sentence. *See* Report at 22-23.

Upon my own de novo review of the record, I concur that the evidence falls short of establishing by a preponderance of the evidence that Wearing suffered from bipolar disorder at the time of his plea and that his mental condition impaired his ability to consult with counsel with a reasonable degree of rational understanding. The experts disagreed as to whether Wearing had bipolar disorder at the time of the plea. Dr. Thomson opined that Wearing's records were consistent with a diagnosis of bipolar I disorder. Dr. Minrath did not share the opinion that Wearing met the criteria for bipolar I disorder because there was no evidence that Wearing went through a period of mania, which is one of the diagnostic requirements. Rather, Dr. Minrath testified that from her review of the records and her testing of Wearing, she formed the impression that he has experienced periods of hypomania, and therefore his symptoms were more consistent with a diagnosis of bipolar II disorder. Both Dr. Thomson and Dr. Minrath

relied on the medical opinion of Dr. Michael Dowen, Psy.D., who assessed Wearing multiple times in 2005 and 2006. Dr. Dowen believed that Wearing had bipolar I disorder based on Wearing's report of symptoms such as anxiety, insomnia, decreased appetite, poor concentration, and a depressed mood, as well as Dr. Dowen's own observation of Wearing's pressured speech. In their report, Dr. Thomson and Dr. Minrath also considered the opinion of Dr. David Israel, Ph.D., who evaluated Wearing in 2006 and concluded that he had bipolar disorder.

In contrast, Dr. Brannen opined that Wearing suffered a depressive disorder and a personality disorder with antisocial and narcissistic features, but that he did not meet the diagnostic criteria for a bipolar disorder because his self-reported manic or hypomanic episodes did not last for longer than a day and hypomania requires a duration of four days and mania of one week. Further, his reported episodes of depression did not last for the two-week period required. Dr. Brannen explained that even though Dr. Dowen had diagnosed Wearing with bipolar disorder, he had never observed any symptoms of mania, and the record is devoid of any observations of mania or bizarre behavior.

While it is always difficult to reconcile the conflicting assessments of highly qualified experts, after considering all of the evidence and testimony in this matter, I concur with the Magistrate Judge that Defendant has not met his burden of showing by a preponderance of the evidence that he had bipolar disorder at the time of the guilty plea. Many of Wearing's symptoms are consistent with those of bipolar disorder, but as Dr. Brannen stated, the evidence fails to demonstrate that Wearing met each of the diagnostic criteria at the time of his plea. In particular, evidence of the presence of and the duration of manic or hypomanic episodes is scant, and it is unclear whether Wearing's periods of depression lasted for the period required.

Regardless of whether Wearing's condition at the time of his plea qualified as bipolar disorder, he was suffering from a depressive disorder and several symptoms of bipolar disorder or personality disorder. The experts had differing opinions on whether Wearing's condition rendered him unable to consult with counsel with a reasonable degree of rational understanding. Dr. Thomson testified that bipolar disorder can have an impact on decision-making and relationships with others, and in this case, Wearing's bipolar disorder disrupted his ability to work with counsel. Thomson interpreted the record as showing that Wearing was constantly focused on blaming counsel, was upset and irritable, and did not understand that his own mood disorder was affecting his ability to work with counsel. Dr. Brannen, on the other hand, opined within a reasonable degree of psychological certainty that Wearing was competent at the time of the guilty plea. She based her opinion in part on evidence that Wearing advocated for himself in a goal-directed and lucid manner and had a clear idea of how he wanted his case to be handled. She characterized Wearing as distrustful of the legal system and of court-appointed defense attorneys, but no more so than many other criminal defendants. Dr. Israel, who in 2006 conducted a retrospective evaluation of Wearing's competency to plead guilty in 2005, also concluded that Wearing was competent to understand the entire process and legal proceedings he had been facing.

I reach the same conclusion as Dr. Brannen and Dr. Israel. At the guilty plea hearing, Wearing's behavior did not appear out of the ordinary. He responded in a clear and appropriate manner to each of the questions asked of him, reciting his name, date of birth, and level of education, and indicating that he wished to waive the reading of the indictment. He stated that he had received a copy of the indictment, and that he had ample time to consult with his attorney about it. He affirmed that he was fully satisfied with the counsel, representation, and advice that

had been given him by his attorney.  Similarly, at his sentencing proceeding, Wearing presented himself in an articulate fashion and appropriate manner.  He testified in open court about his participation in the crime for which he was being sentenced, his mental condition and the side effects of his medications, his relationship with his family, and his preference regarding the location of his detention facility.  Wearing's actions in court do not suggest any difficulty interacting with court personnel or his counsel, or with assisting in his own defense.  Furthermore, when the sentence imposed by the Court exceeded Wearing's expectations, he expressed dissatisfaction with the result and indicated that the sentence needed to be appealed, which demonstrated his understanding of the ramifications of the sentence and the role an appeal could play in advancing his own defense.

The competence that Wearing exhibited in court notwithstanding, the record reflects that Wearing did have some problems with the counsel appointed him.  In May 2005, he wrote a letter to this Court stating that his first appointed counsel, Helen Phillips, was ineffective and requesting that new counsel be appointed.  In the motion to withdraw as counsel, Phillips observed that Wearing had directed foul language toward her and her staff and had expressed displeasure over the proposed plea agreement she had sent him.  Less than a month after new counsel, Andrew Wilder, was appointed to represent Wearing, he wrote to the Court requesting another change in counsel in part because Wilder had represented him in a prior state criminal matter and Wearing did not feel that Wilder had performed adequately.  I denied the motion for lack of good cause shown.  Although Wearing appeared unwilling to accept the proposed plea agreement, within two weeks Wearing's plea was changed to guilty, and a week later Wearing appeared in court and pleaded guilty, verbally affirming that he was fully satisfied with the counsel, representation, and advice that had been given him by his attorney.

A defendant has an absolute right to reject the advice of counsel, and doing so does not make him incompetent or unwise. *United States v. Moussaoui*, 591 F.3d 263, 294 (4th Cir. 2010). Pro se filings with the court that are somewhat confrontational and unusual do not necessarily support a finding of incompetency. *Id.* at 293. Expressions of frustration and anger on the part of a defendant charged with a serious crime and being held in confinement are natural and do not equate to incompetence. *Id.* As Dr. Brannen testified, someone with the propensity for impulsive behavior and poor judgment can still be competent to assist counsel in his own defense. Wilder's testimony in the § 2255 action revealed there were difficulties in communication between Wearing and him, in part because Wearing only wanted to talk about what he wanted and nothing else. Yet Wilder testified that he experienced similar communication problems with other defendants, and he did not believe Wearing was unable to assist counsel in his own defense.

Wearing's letters to the Court and his dissatisfaction with his attorneys cut both ways. On the one hand, they show that Wearing suspected, without much basis, that his attorneys were acting in the interest of the prosecution rather than in his own best interest. They exhibit Wearing's deep distrust of his appointed representatives' motive and competence. On the other hand, they demonstrate his functional ability to read and communicate, his basic grasp of the legal principles that govern his case, and his ability to make logical arguments to advocate for his defense. His desire to change attorneys may have reflected poor judgment, but it did not show he lacked a reasonable degree of rational understanding of the circumstances. Although Wearing initially desired to reject the proposed plea agreement and continue with discovery, he ultimately changed his mind and signed the plea agreement. He clearly represented in open court his desire

to plea guilty. The weight of the evidence shows that Wearing's ability to assist counsel in his own defense was not impaired. The objection is overruled.

## C.

Defendant also objects "to the assertion that the 'entire record' supports a finding of competency," because certain facts in the record support a finding of incompetency. Def.'s Objections at 3-4. In the Report, the Magistrate Judge stated "it also would be difficult for anyone to challenge on the entire record before the court the fact that Wearing understood the nature of the charges and the proceedings against him." Report at 22. Evidently, Defendant interprets that statement to mean the Magistrate Judge found that *everything* in the record supports a finding of competency. Defendant misses the mark. The statement merely conveys that the evidence in the record strongly supports a finding that Wearing understood the nature of the charges and proceedings. Defendant's objection is overruled.

## D.

In addition to Defendant's specific objections to the Report, Defendant makes a blanket objection to "all findings of fact regarding the opinions expressed in the reports of Drs. J. Anderson Thomson and Marilyn Minrath" and to "all findings of expert facts in [the Report], on the grounds that these findings are based on fragments of the testimony by the experts." Def.'s Objections at 1. The Fourth Circuit has directed that "[s]ection 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007); *see also Orpiano*, 687 F.2d at 47 (holding that de novo review is not warranted "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed

findings and recommendations"). General, nonspecific objections to a magistrate judge's report and recommendation, reiterating arguments previously presented, have the same effect as a failure to object. *Veney*, 539 F. Supp. 2d at 845. Accordingly, "[a]ny part of the magistrate judge's disposition that has not been properly objected to is reviewed for, at most, clear error." *Id.* at 844; *see also Diamond*, 416 F.3d at 315 ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Defendant's objection to the remaining findings of fact in the Report is general and nonspecific. Accordingly, I need only review those findings for clear error. Having reviewed the Report for clear error, I find none.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts in full the Report and Recommendation of the Magistrate Judge. It is determined that Wearing possessed the mental capacity to enter a knowing and voluntary guilty plea at the time of his plea hearing. Because Wearing was competent to enter his guilty plea, judgment against Wearing will be reimposed. An accompanying order will follow and a separate judgment will be entered.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record, and to Defendant.

Entered this 15th day of March, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE